# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

SIDNEY RUCKER,

          Petitioner,      :    Case No. 3:13-cv-344

  - vs -                         District Judge Timothy S. Black
                                   Magistrate Judge Michael R. Merz

ERNIE MOORE, WARDEN,
Lebanon Correctional Institution,

                              :

          Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought by Petitioner Sidney Rucker *pro se* under 28 U.S.C. § 2254, is before the Court for initial review pursuant to Rule 4 of the Rules Governing § 2254 Cases. That Rule provides in pertinent part: "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

**Procedural History**

Rucker was convicted in the Montgomery County Common Pleas Court in October 2010 of aggravated robbery and kidnapping with a three-year firearm specification and sentenced to seven years imprisonment (Petition, Doc. No. 2, ¶¶ 2, 3, 5). He appealed to the Ohio Second District Court of Appeals which affirmed the conviction. *State v. Rucker*, 2012 Ohio 4860, 2012 Ohio App. LEXIS 4254 (2nd Dist. Oct. 19, 2012)  The Ohio Supreme Court declined jurisdiction

over a further appeal. *State v. Rucker*, 134 Ohio St. 3d 1471 (2013). This Petition for writ of habeas corpus followed.

# ANALYSIS

Rucker pleads the following Grounds for Relief:

> **Ground One:** Failure to grant motion to suppress [in] violation of 4th Amendment.
>
> **Supporting Facts:** The deputy that effectuated the stop of appellant lacked a reasonable articulable suspicion to do so. The deputies that effectuated the arrest of appellant lacked probable cause to do so. Officers also conducted an illegal show up identification.
>
> **Ground Two:** Reversible prosecutorial misconduct. 5th and 14th Amendment.
>
> **Supporting Facts:** During closing arguments the prosecutor said "We don't reward defendants for getting rid of the gun. We don't do it."
>
> **Ground Three:** Jury misconduct. 5th, 6th, and 14th Amendments.
>
> **Supporting Facts:** The trial court errored [sic] and improperly answered a jury question during deliberations without counsel present.
>
> **Ground Four**: Ineffective Assistance. 6th and 14th Amendment.
>
> **Supporting Facts:** Counsel was ineffective for failing to raise all meritorious issues presented above.

(Petition, Doc. No. 2, PageID 32-37.)

**Ground One**

In his First Ground for Relief, Rucker asserts his Fourth Amendment rights were violated in various ways in his initial detention and arrest.

Federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone v. Powell,* 428 U.S. 465 (1976). *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does.  The district court must also decide if a Petitioner's presentation of claims was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of procedural rule prevents state court consideration of merits.  *Riley v. Gray*, 674 F.2d 522 (6th  Cir. 1982).  The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526.

As the opinion of the Second District indicates, Rucker had a full and fair opportunity to litigate his Fourth Amendment issues in both the trial and appellate courts.  The First Ground for

Relief should therefore be dismissed with prejudice.

**Ground Two**

In his Second Ground for Relief, Rucker complains of a comment by the prosecutor in closing regarding Rucker's inferred disposal of the firearm that "[w]e don't reward defendants for getting rid of the gun." This issue was before the Second District as Rucker's second assignment of error which that court decided as follows:

> [*P27] In his second assignment of error, Rucker claims that the prosecutor engaged in misconduct when he (1) asked the victim and the victim's mother about how their lives were affected by the alleged robbery and kidnapping and (2) told the jury during closing argument, "We do not reward defendants for getting rid of the gun. We don't do it."
>
> [*P28] In reviewing claims of prosecutorial misconduct, the test is whether the prosecutor's remarks were improper and, if so, whether those comments prejudicially affected the substantial rights of the defendant. *State v. Jones*, 90 Ohio St.3d 403, 420, 2000 Ohio 187, 739 N.E.2d 300 (2000). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct 940, 71 L.Ed.2d 78 (1982). Where it is clear beyond a reasonable doubt that the jury would have found the defendant guilty, even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. See *State v. Underwood*, 2d Dist. Montgomery No. 24186, 2011 Ohio 5418, ¶ 21. We review allegations of prosecutorial misconduct in the context of the entire trial. *State v. Stevenson*, 2d Dist. Greene No. 2007-CA-51, 2008 Ohio 2900, ¶ 42, citing *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).
>
> [*P29] Rucker did not object to the prosecutor's statement during closing argument or to the questions posed to Leigh and his mother concerning how the offenses affected them. Consequently, we review them for plain error. Plain error may be noticed if a manifest injustice is demonstrated. Crim.R. 52(B); *State v. Lewis*,

2d Dist. Montgomery No. 23850, 2011 Ohio 1411, ¶ 54. In order to find a manifest miscarriage of justice, it must appear from the record as a whole that but for the error, the outcome of the trial clearly would have been otherwise. *Id*., citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978).

**[\*P30]** Rucker argues that the prosecutor's statement, "We do not reward defendants for getting rid of the gun. We don't do it," was an improper statement of the prosecutor's personal belief or opinion. We have previously addressed a similar comment by the prosecutor regarding the absence of a firearm, stating:

> [T]he State correctly asserts — and the prosecutor correctly stated during voir dire — that the prosecution was not required to produce the weapon in order to prove the firearm specifications. Circumstantial evidence and direct evidence have equivalent probative value. Consequently, the State could prove the firearm specification solely on the basis of circumstantial evidence; the prosecutor could have reasonably informed the prospective jurors of that fact.
>
> However, the prosecutor's proffered reason for not requiring the weapon to be produced, i.e., that "we don't reward people for shooting someone and getting rid of a firearm," was objectionable. Lewis was not charged with tampering with evidence, and no evidence was submitted at trial to support the contention that Lewis "got rid of" or "concealed or destroyed" the firearm. The mere fact that the gun was not recovered at the scene is insufficient to establish tampering with evidence. Nevertheless, in this case, the felonious assault and murder offenses arose out of the shooting death of [the victim]; there was overwhelming evidence that an operable firearm was used in the commission of the offenses. Accordingly, we find the prosecutor's statements to be harmless beyond a reasonable doubt.

(Citations omitted.) *Lewis* at ¶ 45-46.

**[\*P31]** Here, the prosecutor stated during his closing argument, "Remember, just because the gun is not here today doesn't mean you cannot say the words guilty for a gun crime. We do not reward defendants for getting rid of the gun. We don't do it." This statement might be better characterized as an improper comment on the evidence rather than an improper statement of the

5

> prosecutor's personal opinion or belief. Regardless of the characterization, for the reasons we expressed in *Lewis*, the prosecutor's statement was objectionable.
>
> **[*P32]** Nevertheless, we find that the prosecutor's statement was harmless beyond a reasonable doubt. Before the offending statement, the prosecutor detailed **[**14]** the evidence that had been presented about Rucker's possession of a gun. Three witnesses — Leigh, Leigh's mother, and Lewis — all testified that they saw Rucker with a gun, and both Leigh and Lewis described the gun for the jury. Most notably, Lewis, who had no prior relationship with any of the parties, testified that he saw Rucker pointing a 9mm or .45 caliber gun at Leigh and hit Leigh in the face with the gun. Upon reviewing the trial as a whole, we conclude that the prosecutor's statement was harmless beyond a reasonable doubt.

*State v. Rucker, supra*, ¶¶ 27-32.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Here the state court of appeals decided a number of questions important to the Second Ground for Relief.  First, it decided that Rucker's counsel had failed to object to the prosecutor's comment and that it would therefore review only for plain error.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default

>and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright,* 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

>First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>            . . . .
>Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

7

> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

By conducting only plain error analysis, the Second District was enforcing the contemporaneous objection rule. A state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*,

224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

A habeas petitioner can overcome a procedural default by showing excusing cause and prejudice. *Maupin, supra.* In this case in his Fourth Ground for Relief, Rucker alleges his trial counsel provided ineffective assistance in failing to make the contemporaneous objection. However, the opinion of a state court on plain error review is still entitled to AEDPA deference if the federal court reaches the merits despite the procedural default. *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009). Here the Second District found the prosecutor's comment, though objectionable, was "harmless beyond a reasonable doubt." *Rucker, supra,* ¶ 32. If the comment was harmless, then it cannot have been prejudicial for trial counsel to have failed to object. In order to have proven ineffective assistance of trial counsel for failure to object, Rucker would have had to show that it was both deficient performance and prejudicial. In rejecting Rucker's Sixth Assignment of Error on ineffective assistance of trial counsel, the Second District applied the appropriate federal standard from *Strickland v. Washington*, 466 U.S. 468 (1984). *Id.* at ¶ 58.

In sum, the Second Ground for Relief is procedurally defaulted because of the lack of contemporaneous objection. The default is not excused by ineffective assistance of trial counsel because the Second District found no prejudice from the failure to object. These decisions were not objectively unreasonable applications of the relevant Supreme Court precedent, particularly *Strickland v. Washington*, *supra*, and *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993), on the question of harmless error. The Second Ground for Relief should therefore be dismissed with prejudice.

**Ground Three**

In his Third Ground for Relief, Rucker claims his constitutional rights were violated when the trial judge answered a jury question during deliberations without his counsel being present.[1] The Second District Court of Appeals also decided this issue on the merits as follows:

> **[\*P37]** In his third assignment of error, Rucker claims that the trial court erred when it answered a question by the jury during its deliberations outside of his presence and without affording his attorney an opportunity to object or offer input on how the question should be answered.
>
> **[\*P38]** The trial transcript reflects that around 11:20 a.m. on the second day of deliberations, the jury sent the court, through the bailiff, a written question, which asked, "Does kidnapping have an end point? Is it the mothers [sic] house[?] Can the kidnapping charge include the cycle of Citizen's Mart [to] James' house [to] Mr. Lewis's house[?] In other words, can we consider that James was not 'released' of his constraint until he left Lewis's house[?]" The court attempted to contact counsel, but was only able to reach the prosecutor. At 11:45 a.m., without consulting with either of the attorneys regarding the jury's question, the court answered the question, in writing, as follows: "Focus on action, if you find it occurred. Look at page 7, Count II of the instructions[.]" (Emphasis in original.) Count II was the court's written instruction on kidnapping, which was located on page 7.
>
> **[\*P39]** At approximately 11:50 a.m., defense counsel came to the court. The prosecutor was contacted, and the court retrieved the jury's question and the written answer from the jury. The question was then discussed with the attorneys, who had different views on how the question should have been answered. (Rucker's presence was waived by his counsel for purposes of this discussion.) The prosecutor indicated that he did not believe that the court's response answered the jury's question, but he did not believe the answer itself was wrong. The prosecutor stated that the proper answer to the jury's question as to whether it could "consider that James was not 'released' of his constraint until he left Lewis's house" was "yes." The prosecutor further suggested that the court add "regardless of duration" to its answer.

---

[1] Rucker labels this as a claim of "jury misconduct," but it is properly treated as a claim of trial court error.

**[\*P40]** Defense counsel also objected to the court's answer, stating that the court should have simply referred the jury to its collective memory for the factual issue and provided a reference to the legal instructions on the definition of kidnapping. Defense counsel further objected to the court's answering the jury's question without consulting with counsel, and he requested a mistrial due to both the court's answer and the procedure it followed. The court denied the motion for a mistrial, and it ruled that it would not change the answer that it had previously given to the jury. The answer was returned to the jury without modification.

**[\*P41]** As an initial matter, a criminal defendant has a right pursuant to the Fourteenth Amendment to be present at every "critical stage" of his trial. *State v. Campbell*, 90 Ohio St.3d 320, 346, 2000 Ohio 183, 738 N.E.2d 1178 (2000), citing *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934). *See also* Crim.R. 43. "The question is whether 'his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *Campbell* at 346, quoting *Snyder* at 105-106.

**[\*P42]** As a general rule, any communication between judge and jury that takes place outside the presence of the defendant or parties to a case is error which may warrant the ordering of a new trial. Such communications are required to be made in the presence of the defendant or parties so that they may have an opportunity to be heard or to object before the judge's reply is made to the jury." (Citations omitted.) *Bostic v. Connor*, 37 Ohio St.3d 144, 149, 524 N.E.2d 881 (1988).

**[\*P43]** Nevertheless, when defense counsel is present, a defendant's constitutional rights are not violated when he is absent during the conference regarding the court's response to the jury's question. *State v. Everette*, 2d Dist. Montgomery No. 22838, 2009 Ohio 5738, ¶ 15, citing, *e.g., Campbell* at 346. And "[a]lthough the oral delivery of jury instructions is a critical stage of a trial, a trial court's written response to a jury question seeking to clarify those instructions is not." *State v. Martin*, 2d Dist. Montgomery No. 22744, 2009 Ohio 5303, ¶ 10, citing *Campbell* at 346.

**[\*P44]** In this case, the trial court erred by engaging in a communication with the jury, without first providing counsel an opportunity to be heard or to object. "Such private communication outside the presence of the defendant does not, however, create a

11

conclusive presumption of prejudice. The communication must have been of a substantive nature and in some way prejudicial to the party complaining." (Citations omitted.) *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990). For example, when the trial court's response merely reiterates the same instruction that the jury originally received, the improper ex parte communication is harmless. *State v. Abrams* , 39 Ohio St.2d 53, 56, 313 N.E.2d 823 (1974).

**[\*P45]** As stated above, the trial court's communication with the jury concerned a question from the jury regarding the duration of the kidnapping. The trial court responded, in writing, telling the jury to "focus on action, if you find it occurred" and to review the jury instruction on kidnapping, which was located on page 7 of the written instructions. The court did not expressly tell the jury, as requested by defense counsel, to rely on its collective memory as to what had occurred and to apply its findings to the instructions previously provided by the court, but the trial court's written response was, in essence, such an instruction. The court did not answer the jury's question as to whether kidnapping had an endpoint, and it did not provide any supplemental instruction on the relevant law or how to apply the facts to the law previously provided. Moreover, the answer given to the question was the same both before and after hearing from the attorneys. Because the trial court's response essentially reiterated the instructions previously provided, albeit not in the same words, we conclude that the court's erroneous communication with the jury during deliberations was harmless.

**[\*P46]** The third assignment of error is overruled.

*State v. Rucker, supra*, ¶¶ 37-46.

This decision is not an objectively unreasonable application of the relevant Supreme Court precedent, *Snyder v. Massachusetts, supra,* and is therefore entitled to deference under 28 U.S.C. § 2254(d)(1).  The Third Ground for Relief should therefore be dismissed with prejudice.

**Ground Four**

In his Fourth Ground for Relief, Rucker asserts he received ineffective assistance of trial counsel when his trial attorney failed to raise "all meritorious issues presented above."  Rucker does not specify what "meritorious issues" he is referring to.  The Second District considered a similarly-worded claim as the Sixth Assignment of Error and decided it together with a more specific ineffective assistance of trial counsel claim made in the Fifth Assignment of Error:

> **[*P56]** Rucker's fifth and sixth assignments will be addressed together. They read:
> APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE PROSECUTOR'S ASKING OF IRRELEVANT QUESTIONS WHICH WERE PREJUDICIAL TO APPELLANT.
>
> APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE ALL OTHER MERITORIOUS ISSUES PRESENTED ABOVE.
>
> **[*P57]** In his fifth and sixth assignments of error, Rucker claims that his trial counsel acted deficiently by failing to object to the prosecutor's victim-impact questions, the prosecutor's closing argument, and to the court's failure to merge his offenses as allied offenses of similar import. He also claims that his trial counsel should have moved to suppress his clothing and the live identification of him.
>
> **[*P58]** We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that counsel's errors were serious enough to create a reasonable probability that, but for the errors, the result of

the trial would have been different. *Id*. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992).

**[\*P59]** The "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000 Ohio 448, 721 N.E.2d 52 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Rather, trial counsel's failure to file a motion to suppress constitutes ineffective assistance of counsel only if the failure to file the motion caused the defendant prejudice; that is, when there is a reasonable probability that, had the motion to suppress been filed, it would have been granted. *State v. Howard*, 2d Dist. Montgomery No. 23795, 2011 Ohio 27, ¶ 22, citing *State v. Wilson*, 2d Dist. Clark No. 08 CA 445, 2009 Ohio 2744, ¶ 11.

**[\*P60]** As previously discussed, the prosecutor's victim-impact questions and the prosecutor's closing argument, although improper, did not affect the outcome of Rucker's trial. Consequently, we cannot conclude that Rucker was prejudiced by his counsel's failure to object to the prosecutor's conduct. In addition, we have concluded that the trial court did not err in failing to merge Rucker's offenses as allied offenses of similar import. Accordingly, Rucker's counsel did not act deficiently by failing to object to the court's imposition of sentence on both of Rucker's offenses.

**[\*P61]** With respect to the motion to suppress, Rucker argues that his counsel should have argued in a motion to suppress that he was seized unlawfully and therefore the show-up identification by Leigh, which occurred during that seizure, should have been suppressed.

**[\*P62]** The testimony of Deputies Vo and Caito at the suppression **[\*\*28]** hearing revealed the following facts:

**[\*P63]** At approximately 6:08 p.m. on June 23, 2010, Deputies Vo and Caito both heard a dispatch that a "dark-skin, black male," who was wearing a red polo shirt and blue jean shorts and carrying a black handgun, was chasing a "light-skin black, male" in a red shirt and blue jeans. Vo indicated that the dispatcher had received several calls, including a call from the victim's niece and an

14

identified witness on a nearby street. Vo understood that the incident was "in progress," and the deputies were provided an intersection where they were to go to locate the perpetrator. Both deputies headed toward that location in separate marked cruisers.

[*P64] As Deputy Vo approached the area, she saw a "dark-skinned, black male [with] no shirt on", who was wearing blue shorts and carrying a "red object," running into an overgrown vacant lot. Vo parked her cruiser, approached the man (Rucker), and ordered him at gunpoint to get on the ground. Vo saw that the man was carrying a red polo shirt; she did not see a handgun or another person being chased. As the man was getting onto the ground, Deputy Caito drove up in his cruiser, handcuffed the man, and put him in his cruiser.

[*P65] Deputies Vo and Caito briefly looked around the lot for the missing handgun. Vo then "backtracked the steps" that she had seen Rucker running, while Caito took Rucker to the victim's home. Caito parked near the victim's home and approached Sergeant Statzer, who was standing just inside the victim's front door. Caito asked Statzer to step outside with him. Caito then informed Statzer that "the subject that Deputy Vo had located was in the back of my car, and [he] asked [Statzer] if he wanted to do a live ID on that subject." Within a few seconds, Statzer "got the victim from the house," and told him, "We have a subject in the back of the car we'd like you to take a look at, see if you recognize them." Statzer and the victim came within two feet of Caito's cruiser, the victim looked in the back window, and the victim [**30] stated without hesitation, "That's him. That's the guy." (At that time, Rucker's red shirt was on the seat next to him.) The victim then went back into his house.

[*P66] Rucker does not now challenge the trial court's conclusion that the show-up identification by Leigh was not unduly suggestive. Rather, his argument turns on whether the deputies properly detained him and brought him to Leigh's residence for the identification.

[*P67] The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004 Ohio 2738, ¶ 10, citing *Terry*. We determine the

existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003 Ohio 1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). The officer must have more than an inchoate hunch or suspicion to justify an investigatory stop.

**[\*P68]** In this case, we cannot conclude that Rucker's counsel acted deficiently by failing to challenge the show-up identification on the ground that Rucker's seizure by the police, prior to the identification, was unlawful. The deputies' testimony at the suppression hearing established that they were responding to several reports that a man in a red polo shirt and blue shorts and carrying a black handgun was currently chasing another man. The deputies responded immediately, and when Deputy Vo was within a few blocks of the intersection reported in the dispatch, she saw Rucker, who matched the physical description, running in a vacant field and heading away from the reported location. Rucker was wearing blue jeans and Deputy Vo could see that he was carrying something red in his hands. All of these facts (*e.g.*, the timing and location of the encounter and the suspect's description), when considered together, created a reasonable suspicion that Rucker was the person who had chased another man with a gun, as reported in the dispatch. Deputies Vo and Caito were thus entitled to stop and detain Rucker to investigate that reported criminal activity.

**[\*P69]** It is arguable that the deputies' conduct at the vacant field may have placed Rucker in custody in the absence of probable cause to arrest him. Nevertheless, the officers had sufficient information to create a reasonable suspicion that Rucker was the perpetrator of the crimes against Leigh, and they were therefore entitled to detain him to investigate that possibility. As part of that detention, the officers were permitted to transport Rucker to Leigh's residence for a show-up identification. Based on the record before us, we cannot conclude that Rucker would have prevailed on his motion to suppress based on an unlawful detention had Rucker's counsel presented such a motion in the trial court.

**[\*P70]** Finally, Rucker argues that his attorney should have moved to suppress his clothing. The record contains no testimony as to when Rucker's clothing was seized, but we infer from the evidence at the suppression hearing that his clothing was taken after the

16

> show-up identification. At that juncture, there was probable cause to arrest Rucker, and we can find no basis in the record to conclude that counsel would have prevailed had he filed a motion to suppress the seizure of Rucker's clothing.
>
> **[*P71]** Rucker's fifth and sixth assignments of error are overruled.

*State v. Rucker, supra*, ¶¶ 56-71.

Here again the Second District applied the relevant controlling Supreme Court precedent under both the Fourth and Sixth Amendments.  The court essentially found there was no ineffective assistance of trial counsel in failing to object to the prosecutor's closing argument comment because the comment was harmless.  Furthermore, there was not ineffective assistance of trial counsel in failing to file an additional motion to suppress because such a motion would appropriately have been denied.  This decision is not an objectively unreasonable application of *Strickland, supra*, or of *Terry v. Ohio*, 392 U.S. 1 (1968).  Ground Four should therefore be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

October 8, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).